1  Jonathan Evans (Cal. Bar #247376)
   CENTER FOR BIOLOGICAL DIVERSITY
2  351 California St., Suite 600
   San Francisco, CA 94104
3  Phone: 415-436-9682 x318
   Fax: 415-436-9683
4  email: jevans@biologicaldiversity.org

5  Counsel for Plaintiffs Center for Biological Diversity and Center for Environmental Health

6

7

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY<br>351 California St., Suite 600<br>San Francisco, CA 94104<br><br> and<br><br>CENTER FOR ENVIRONMENTAL HEALTH<br>2201 Broadway<br>Oakland, CA 94612<br><br>      Plaintiffs,<br><br>  v.<br><br>GINA McCARTHY,<br>in her official capacity as Administrator of the<br>United States Environmental Protection Agency,<br><br>      Defendant. | ) Case No.<br>)<br>)<br>)<br>) **COMPLAINT FOR DECLARATORY**<br>) **AND INJUNCTIVE RELIEF**<br>) (Clean Air Act, 42 U.S.C. §§ 7401 *et. seq.*)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I. INTRODUCTION

1.     Plaintiffs the Center for Biological Diversity and Center for Environmental Health

("Plaintiffs") bring this Clean Air Act citizen suit to compel the United States Environmental

Protection Agency ("EPA") to undertake overdue mandatory duties regarding lead pollution.

28

1 Lead is highly toxic to wildlife, ecosystems, and people, especially children. As noted by the

2 EPA, there is no recognized safe level of lead in children's blood. Lead is persistent in the

3 environment and accumulates in soils, aquatic systems, and the biological tissues of plants,

4 animals and other organisms.

5 2. Defendant, Gina McCarthy, in her official capacity as Administrator of the United States

6 Environmental Protection Agency, has failed to make findings of failure to submit under 42

7 U.S.C. § 7410(k)(1)(B), and publish notice of those findings in the Federal Register, for

8 nonattainment state implementation plans for the 2008 lead National Ambient Air Quality

9 Standards for the following areas listed in Table 1:

**TABLE 1[1]**

| AREA | STATE |
|------|-------|
| Pottawattamie | Iowa |
| Arecibo | Puerto Rico |

3. Furthermore, EPA has failed to take final action, pursuant to 42 U.S.C. § 7410(k)(2) – (3), to approve or disapprove, in whole or part, the 2008 lead National Ambient Air Quality Standards nonattainment state implementation plan submissions listed in Table 2 below:

**TABLE 2[2]**

| AREA | COMPLETION DATE | FINAL ACTION DUE DATE |
|------|-----------------|----------------------|
| Tampa, Florida | 12/29/2012 | 12/29/2013 |
| Cleveland, Ohio | 12/25/2012 | 12/25/2013 |
| Delta, Ohio | 12/25/2012 | 12/25/2013 |
| Eagan, Minnesota | 12/11/2012 | 12/11/2013 |
| Frisco, Texas | 4/17/2013 | 4/17/2014 |

---

[1] Environmental Protection Agency, *National Status of State SIP Requirements: Pollutant Requirement by State, Area (Requirement: Lead SIP, For Pollutant: Lead (2008)), available at* http://www.epa.gov/air/urbanair/sipstatus/reports/lead__2008_lead_sip_enbystate.html (last visited Nov. 18, 2014).
[2] *Id.*

1  4.  Finally, EPA has failed to take final action pursuant to 42 U.S.C. § 7410(k)(2)–(3), to

2 approve or disapprove, in whole or part, the Clean Air Act section 110(a)(2) infrastructure state

3 implementation plan requirement for the following 2008 lead National Ambient Air Quality

4 Standards listed in Table 3 below:

5                **TABLE 3**[3]

| Submittal | Completeness Date | Due Date for Final Action |
|---|---|---|
| North Carolina 110(a)(2) Lead (2008) Infrastructure SIP | 01/20/13 | 01/20/14 |

8
9  5.  Accordingly, Plaintiffs bring this action against Defendant Gina McCarthy, in her official

10 capacity as EPA Administrator, to compel her to perform her mandatory duties.

11                **II. JURISDICTION**

12  6.  This case is a Clean Air Act citizen suit. Therefore, the Court has jurisdiction over this

13 action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a)(2)

14 (citizen suits for failure to perform a non-discretionary duty required by the Clean Air Act).

15  7.  An actual controversy exists between the parties. This case does not concern federal

16 taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve the Tariff Act of

17 1930. Thus, this Court has authority to order the declaratory relief requested under 28 U.S.C. §

18 2201. If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue

19 injunctive relief.

20                **III. NOTICE**

21  8.  On June 18, 2014 Plaintiffs mailed to EPA by certified mail, return receipt requested,

22 written notice of intent to sue regarding the violations alleged in claims one and two in this

---

[3] Environmental Protection Agency, *Status of SIP Infrastructure Requirements: North Carolina Infrastructure Requirements by Pollutant*, *available at* http://www.epa.gov/air/urbanair/sipstatus/reports/nc_infrabypoll.html (last visited Nov. 18, 2014).

28

1  Complaint.  EPA received this written notice on June 23, 2014, as indicated by the return receipt

2  cards.  On July 14, 2014 Plaintiff Center for Biological Diversity mailed EPA by certified mail,

3  return receipt requested, written notice of intent to sue regarding the violations alleged in claim

4  three in this Complaint.  EPA received written notice on July 21, 2014 as indicated by the return

5  receipt cards.  More than sixty days have passed since EPA received these "notices of intent to

6  sue" letters.  EPA has not remedied the violations alleged in this Complaint.  Therefore, a

7  present and actual controversy exists.

8  ### IV.  VENUE

9  9.      Plaintiff Center for Environmental Health resides in this judicial district.  This civil

10  action is brought against an officer of the United States acting in her official capacity, and there

11  is no real property involved in the action.  Therefore, venue is proper in this Court pursuant to 28

12  U.S.C. § 1391(e).

13  ### V.  INTRADISTRICT ASSIGNMENT

14  10.     Assignment to the San Francisco Division or the Oakland Division is proper pursuant to

15  Civil Local Rule 3-2(c) and (d) because this civil action is brought against an officer of the

16  United States acting in her official capacity, there is no real property involved in the action, and

17  Plaintiff Center for Environmental Health resides in this judicial district.

18  ### VI.  PARTIES

19  11.     Plaintiff Center for Biological Diversity brings this action on behalf of itself and its

20  adversely impacted members.  Plaintiff the Center for Biological Diversity is a non-profit

21  501(c)(3) corporation incorporated in California.  The Center for Biological Diversity has over

22  50,000 members throughout the United States and the world.  The Center for Biological

23  Diversity's mission is to ensure the preservation, protection, and restoration of biodiversity,

28

native species, ecosystems, public lands and waters, and public health through science, policy, and environmental law. Based on the understanding that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked, the Center for Biological Diversity is working to secure a future for animals and plants hovering on the brink of extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us.

12. The Center for Biological Diversity and its members include individuals with varying interests in wildlife species and their habitat, ranging from scientific, professional, and educational to recreational, aesthetic, moral, and spiritual. Further, the Center for Biological Diversity's members enjoy, on an ongoing basis, the biological, scientific, research, educational, conservation, recreational, and aesthetic values of the regions inhabited by these species, including the regions at issue in this action. The Center for Biological Diversity's members observe and study native species and their habitat, and derive professional, scientific, educational, recreational, aesthetic, inspirational, and other benefits from these activities and have an interest in preserving the possibility of such activities in the future. The Center for Biological Diversity and its members have participated in efforts to protect and preserve natural areas, including the habitat essential to the continued survival of native species, and to address threats to the continued existence of these species, including the threats posed by air pollution and other contaminants.

13. Plaintiff Center for Environmental Health brings this action on behalf of itself and its adversely impacted members. Plaintiff the Center for Environmental Health is an Oakland, CA based nonprofit organization that helps protect the public from toxic chemicals and promotes business products and practices that are safe for public health and the environment. The Center

for Environmental Health works in pursuit of a world in which all people live, work, learn, and play in healthy environments.

14.    Plaintiffs' members live, work, recreate, travel and engage in economic and other activities throughout the areas at issue in this complaint and will continue to do so on a regular basis. Pollution in the affected areas threatens and damages, and will continue to threaten and damage, the health and welfare of Plaintiffs' members as well as their ability to engage in and enjoy their other activities. Pollution adversely impacts and diminishes Plaintiffs' members' ability to enjoy the aesthetic qualities and recreational opportunities of the affected areas, their professional well-being, as well as their educational and economic interests in the affected areas.

15.    EPA's failure to timely perform the mandatory duties described herein also adversely affects Plaintiffs, as well as their members, by depriving them of procedural protection and opportunities, as well as information that they are entitled to under the Clean Air Act, including but not limited to ambient monitoring data gathered in accordance with applicable regulations, public notice of exceedances of National Ambient Air Quality Standards, and emissions inventories.  The failure of EPA to perform the mandatory duties also creates uncertainty for Plaintiffs' members as to whether they are exposed to excess air pollution.

16.    The above injuries will continue until the Court grants the relief requested herein.

17.    Defendant Gina McCarthy is the Administrator of the EPA.  In that role, Administrator McCarthy is charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

**VII.  LEGAL BACKGROUND**

18.    Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the

1    Nation is wholesome once again." H.R. Rep. No. 91-1146, at 1 (1970); *reprinted in* 1970

2    U.S.C.C.A.N. 5356, 5356. To promote this, the Act requires EPA to set National Ambient Air

3    Quality Standards for certain pollutants. 42 U.S.C. § 7409(a). National Ambient Air Quality

4    Standards establish maximum allowable concentrations in the air of such pollutants.

5    19.    After EPA promulgates a National Ambient Air Quality Standard, the Clean Air Act

6    requires that EPA designate each area of the country as either a clean air area for that standard,

7    which is known as "attainment" in Clean Air Act parlance, or a polluted area, which is known as

8    "nonattainment" in Clean Air Act parlance. *See* 42 U.S.C. § 7407(d).

9    20.    Under the Clean Air Act, each state is required to submit state implementation plans to

10   ensure that each National Ambient Air Quality Standard will be achieved, maintained, and

11   enforced. *See* 42 U.S.C. § 7410(a)(1). Without such plans, the public is not afforded full

12   protection against the harmful impacts of air pollution.

13   21.    The Clean Air Act requires states to submit "infrastructure" state implementation plans

14   that implement, maintain, and enforce a new or revised National Ambient Air Quality Standard

15   within 3 years of EPA issuing the standard. *See* 42 U.S.C. §§ 7410(a)(2). These infrastructure

16   state implementation plans must address a number of basic requirements including, among other

17   things, ambient air quality monitoring and data systems, programs for enforcement of control

18   measures, and adequate authority and resources to implement the plan. *Id.*

19   22.    For polluted areas which EPA has designated as "nonattainment," states must submit

20   nonattainment area state implementation plans. *See* 42 U.S.C. §§ 7410(a)(2)(I), 7501 – 7509a,

21   7514, 7514a.

22   23.    The Clean Air Act requires EPA to determine whether any state implementation plan

23   submittal is administratively complete. 42 U.S.C. § 7410(k)(1)(B). EPA must make this

COMPLAINT – 7

28

1    determination by "no later than 6 months after the date, if any, by which a State is required to

2    submit the plan or revision."  *Id.*

3    24.    If a state fails to submit any required state implementation plan, there is no submittal that

4    may be deemed administratively complete, and EPA must make a determination, and publish

5    notice of that determination in the Federal Register, stating that the state failed to submit an

6    administratively complete state implementation plan submittal within six months of when the

7    submittal was due.  *See* 42 U.S.C. §§ 7410(c)(1), 7410(k)(1)(B).  This is referred to as a "finding

8    of failure to submit."

9    25.    Once a state does submit a state implementation plan submittal, EPA has a mandatory

10   duty to take final action on any administratively complete state implementation plan submission

11   by approving in full, disapproving in full, or approving in part and disapproving in part within 12

12   months of the date the submission is deemed administratively complete.  42 U.S.C. § 7410(k)(2)

13   and (3).

14                                    **VIII.   FACTS**

15   26.    This case involves EPA's failure to timely implement the National Ambient Air Quality

16   Standards for lead.  There is no safe level of exposure to lead. When EPA originally set the lead

17   National Ambient Air Quality Standard in 1978, it relied on what was then deemed "the

18   maximum safe blood lead level . . . for a population of young children." 73 Fed. Reg. 66,964,

19   66,983 (Nov. 12, 2008) (quoting 43 Fed. Reg. 46,247, 46,253 (Oct. 5, 1978)). Thirty years later,

20   in 2008, EPA noted the increased evidence of risks posed by significantly lower levels of lead

21   exposure: "Based on the current evidence, the Staff Paper first concluded that young children

22   remain the sensitive population of primary focus in this review and that 'there is now no

23   recognized safe level of [lead] in children's blood . . . .'" *Id.* at 66,984 (quoting Environmental

28

1    Protection Agency, *Review of the National Ambient Air Quality Standards for Lead: Policy*

2    *Assessment of Scientific and Technical Information, Office of Air Quality Planning and*

3    *Standards Staff Paper*, EPA–452/R–07–013 (Nov. 2007)).  EPA concluded that the risk of

4    population Intelligence Quotient ("IQ") loss in children and other sensitive populations from

5    airborne lead exposure was unacceptably high, and that the 1978 lead National Ambient Air

6    Quality Standard was inadequate to protect public health with an adequate margin of safety.  *Id.*

7    at 66,987.  EPA thus reduced the primary lead National Ambient Air Quality Standard by 90

8    percent, from 1.5 micrograms per cubic meter ("$\mu g/m^3$") averaged over a calendar quarter to 0.15

9    $\mu g/m^3$ averaged over a rolling 3-month period, in order to satisfy the Clean Air Act requirement

10   that primary National Ambient Air Quality Standards protect public health with an adequate

11   margin of safety.  *Id.* at 66,990-67,007.

12   27.    The effects of lead are not limited to public health. As EPA noted when promulgating the

13   2008 lead National Ambient Air Quality Standard, "[l]ead is persistent in the environment and

14   accumulates in soils, aquatic systems (including sediments), and some biological tissues of

15   plants, animals and other organisms, thereby providing long-term, multi-pathway exposures to

16   organisms and ecosystems."  *Id.* at 67,008.  Ecosystems near sources of lead emissions

17   experience "decreases in species diversity, loss of vegetation, changes to community

18   composition, decreased growth of vegetation, and increased number of invasive species."  *Id.*

19   28.    EPA promulgated a revised National Ambient Air Quality Standard for lead on

20   November 12, 2008, which became effective on January 12, 2009.  *See generally* 73 Fed. Reg.

21   66,964 (Nov. 12, 2008).  On November 22, 2010 EPA made nonattainment designations for the

22   2008 lead National Ambient Air Quality Standards for sixteen areas based on data from a

23   monitoring network dating to prior to 2010, including the following: Tampa, Florida; Eagan,

COMPLAINT – 9

28

Minnesota; Cleveland and Delta, Ohio; and Frisco, Texas. 75 Fed. Reg. 71,033 (Nov. 22, 2010). Those sixteen nonattainment designations became effective December 31, 2010. *Id.* at 71,040-44. For all other areas, the EPA deferred action so that data from newly deployed monitors could be considered in making appropriate designation decisions. EPA designated all remaining areas of the United States as attainment or nonattainment on November 22, 2011, including Pottawattamie, Iowa; and Arecibo Municipio, Puerto Rico. 76 Fed. Reg. 72,097 (November 22, 2011). All remaining nonattainment designations became effective December 31, 2011. *Id.* As prescribed by the EPA Administrator by the rule, nonattainment state implementation plans were due within eighteen months from the effective date of designations, or by no later than June 30, 2013 for all nonattainment designations that became effective by the rule in 2011. *Id.* at 72098; 42 U.S.C. § 7410(a)(1).

## IX. CLAIMS FOR RELIEF

### CLAIM ONE

#### (Failure to make a finding of failure to submit.)

29.     Plaintiffs hereby incorporate by reference each and every allegation set forth above.

30.     The deadline for the 2008 lead National Ambient Air Quality Standard nonattainment state implementation plan submissions was no later than June 30, 2013.

31.     More than six months have passed since June 30, 2013.

32.     Iowa has not submitted a 2008 lead National Ambient Air Quality Standards nonattainment state implementation plan for the Pottawattamie nonattainment area.

33.     Pursuant to 42 U.S.C. 7410(k)(1)(B), EPA had a mandatory duty to make a finding of failure to submit for Iowa by no later than December 30, 2013.

34.     EPA has failed to make such a finding.

35.     Puerto Rico has not submitted a 2008 lead National Ambient Air Quality Standards nonattainment state implementation plan for the Arecibo nonattainment area.

36.     Pursuant to 42 U.S.C. 7410(k)(1)(B), EPA had a mandatory duty to make a finding of failure to submit for Puerto Rico by no later than December 30, 2013.

37.     EPA has failed to make such a finding.

CLAIM TWO

(Failure to Take Final Action on Nonattainment State Implementation Plan Submissions.)

38.     Plaintiffs hereby incorporate by reference each and every allegation set forth above.

39.     The Clean Air Act requires EPA to determine whether any state implementation plan submission is administratively complete.  42 U.S.C. 7410(k)(1)(B).

40.     If, six months after a state submits a state implementation plan, EPA has not made the completeness finding and has not found the submission to be incomplete, the submission is deemed administratively complete by operation of law.  *Id.*

41.     EPA must take final action on an administratively complete submission by approving in full, disapproving in full, or approving in part and disapproving in part within 12 months of the date of the submission's administrative completeness finding.  42 U.S.C. § 7410(k)(2) and (3).

42.     By no later than December 29, 2012 either EPA or operation of law deemed Florida's submission addressing the nonattainment element of the 2008 lead nonattainment state implementation plan for the Tampa nonattainment area administratively complete.

43.     EPA had a mandatory duty to take final action, and publish notice of that action in the Federal Register, by approving in full, disapproving in full, or approving in part and disapproving in part Florida's submission by no later than December 29, 2013.  42 U.S.C. § 7410(k)(2) and (3).

COMPLAINT – 11

44.     EPA has failed to perform this mandatory duty.

45.     By no later than December 11, 2012 either EPA or operation of law deemed Minnesota's submission addressing the nonattainment element of the 2008 lead nonattainment state implementation plan for the Eagan nonattainment area administratively complete.

46.     EPA had a mandatory duty to take final action, and publish notice of that action in the Federal Register, by approving in full, disapproving in full, or approving in part and disapproving in part Minnesota's submission by no later than December 11, 2013.  42 U.S.C. § 7410(k)(2) and (3).

47.     EPA has failed to perform this mandatory duty.

48.     By no later than December 25, 2012 either EPA or operation of law deemed Ohio's submission addressing the nonattainment element of the 2008 lead nonattainment state implementation plan for the Cleveland nonattainment area administratively complete.

49.     EPA had a mandatory duty to take final action, and publish notice of that action in the Federal Register, by approving in full, disapproving in full, or approving in part and disapproving in part Ohio's submission by no later than December 25, 2013.  42 U.S.C. § 7410(k)(2) and (3).

50.     EPA has failed to perform this mandatory duty.

51.     By no later than December 25, 2012 either EPA or operation of law deemed Ohio's submission addressing the nonattainment element of the 2008 lead nonattainment state implementation plan for the Delta nonattainment area administratively complete.

52.     EPA had a mandatory duty to take final action, and publish notice of that action in the Federal Register, by approving in full, disapproving in full, or approving in part and

1    disapproving in part Ohio's submission by no later than December 25, 2013.  42 U.S.C. §

2    7410(k)(2) and (3).

3    53.    EPA has failed to perform this mandatory duty.

4    54.    By no later than April 17, 2013 either EPA or operation of law deemed Texas'

5    submission addressing the nonattainment element of the 2008 lead nonattainment state

6    implementation plan for the Frisco nonattainment area administratively complete.

7    55.    EPA had a mandatory duty to take final action, and publish notice of that action in the

8    Federal Register, by approving in full, disapproving in full, or approving in part and

9    disapproving in part Texas' submission by no later than April 17, 2014.  42 U.S.C. § 7410(k)(2)

10   and (3).

11   56.    EPA has failed to perform this mandatory duty.

12                                   <u>CLAIM THREE</u>

13       (Failure to Take Final Action on Infrastructure State Implementation Plan Submissions.)

14   57.    Plaintiffs hereby incorporate by reference each and every allegation set forth above.

15   58.    The Clean Air Act requires EPA to determine whether any state implementation plan

16   submission is administratively complete.  42 U.S.C. 7410(k)(1)(B).

17   59.    If, six months after a state submits a state implementation plan, EPA has not made the

18   completeness finding and has not found the submission to be incomplete, the submission is

19   deemed administratively complete by operation of law.  *Id*.

20   60.    EPA must take final action on an administratively complete submission by approving in

21   full, disapproving in full, or approving in part and disapproving in part within 12 months of the

22   date of the submission's administrative completeness finding.  42 U.S.C. § 7410(k)(2) and (3).

23

28

61.     By no later than January 20, 2013 either EPA or operation of law deemed North Carolina's submission addressing the lead state implementation plan infrastructure requirement under Clean Air Act section 110(a)(2) regarding the 2008 lead national ambient air quality standards administratively complete.

62.     EPA had a mandatory duty to take final action, and publish notice of that action in the Federal Register, by approving in full, disapproving in full, or approving in part and disapproving in part North Carolina's lead infrastructure state implementation plan submission by no later than January 20, 2014.  42 U.S.C. § 7410(k)(2) and (3).

63.     EPA has failed to perform this mandatory duty.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court:

A.     Declare that the Administrator is in violation of the Clean Air Act with regard to her failure to perform the mandatory duties listed above;

B.     ORDER Defendant to take final action on:

      a.   findings of failure to submit a nonattainment state implementation plan for the 2008 lead National Ambient Air Quality Standards for Pottawattamie, Iowa, and Arecibo, Puerto Rico;

      b.   findings to approve or disapprove, in whole or part, the 2008 lead National Ambient Air Quality Standards nonattainment state implementation plan submissions for Tampa, Florida, Cleveland and Delta, Ohio, Eagan, Minnesota, and Frisco, Texas;

1                 c.   a finding to approve or disapprove, in whole or part, the 2008 lead

2                     National Ambient Air Quality Standards infrastructure state

3                     implementation plan submission for North Carolina.

4 C.       Retain jurisdiction of this matter for purposes of enforcing the Court's order;

5 D.       Grant the Plaintiffs their reasonable costs of litigation, including attorneys' and experts'

6         fees; and;

7 E.       Grant such further relief as the Court deems just and proper.

8

                          Respectfully submitted,

9

10

                         /s/ Jonathan Evans

11                         Jonathan Evans (Cal. Bar #247376)

                        CENTER FOR BIOLOGICAL DIVERSITY

12                         351 California St., Suite 600

                        San Francisco, CA 94104

13                         Phone: 415-436-9682 x318

                        Fax: 415-436-9683

14                         email: jevans@biologicaldiversity.org

15

                        Counsel for Plaintiffs Center for Biological Diversity and

16                         Center for Environmental Health

17 Dated: November 20, 2014

18

19

20

21

22

23

28