UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GINA MCCARTHY,<br><br>　　　　　Defendant. | Case No.  14-cv-05138-WHO<br><br>**ORDER DENYING MOTION TO TRANSFER**<br><br>Re: Dkt. No. 31 |

## INTRODUCTION

Plaintiffs Center for Biological Diversity ("CBD") and Center for Environmental Health ("CEH") filed this action against defendant Gina McCarthy in her official capacity as administrator of the Environmental Protection Agency ("EPA"), alleging that the EPA has failed to comply with certain duties mandated by the Clean Air Act in a way that impacts fifteen judicial districts, including twelve states and the Commonwealth of Puerto Rico.  California is not one of those states.  The issue I must decide in this motion to transfer venue is whether the plaintiffs' desire to litigate here and the inconvenience to them if I transferred the case is outweighed by the local interest of the other districts to have the case heard in one of them.  If I transfer the case to one of the other districts, I will not have advanced the public interest of the other fourteen. Because of the plaintiffs' choice of this forum and the inconvenience they would suffer if I transfer the case, and because the number of other districts that are affected dilutes the interest of any one of them to have the case transferred to it, I DENY the motion to transfer.

## BACKGROUND

The Clean Air Act requires the EPA to promulgate and implement National Ambient Air Quality Standards ("NAAQS") for certain pollutants.  First Amended Complaint ("FAC") ¶ 18. NAAQS establish maximum allowable concentrations for the pollutants they govern.  *Id.*  Once

the EPA promulgates a NAAQS, it must designate regions across the United States as either attainment regions (i.e., regions that already satisfy the standard) or nonattainment regions (i.e., regions that do not already satisfy the standard). FAC ¶ 19. The Act also requires states to provide SIPs to the EPA. FAC ¶ 20. All states must provide "infrastructure" SIPs within three years of a new or revised standard's promulgation to explain plans for implementing the standard within their borders. FAC ¶ 21. States with nonattainment regions must provide "nonattainment" SIPs to explain plans for implementing the relevant standards within their particular nonattainment regions. FAC ¶ 22.

The EPA must determine whether a SIP is "administratively complete" within six months of the SIP submission deadline. FAC ¶ 23. If a state fails to submit a required SIP, the EPA must publish a "finding of failure to submit" in the Federal Register. FAC ¶ 24. Once a state submits an administratively complete SIP, the EPA has twelve months to "take final action" on the SIP by approving it in full, disapproving it in full, or approving it in part and disapproving it in part. FAC ¶ 25.

Plaintiff CBD is a non-profit organization whose mission is to "ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters, and public health through science, policy, and environmental law." FAC ¶ 11. It is incorporated in California and has more than 50,000 members throughout the United States and the world. *Id.* Plaintiff CEH is a nonprofit organization based in Oakland, California. FAC ¶ 13. It "helps protect the public from toxic chemicals and promotes business products and practices that are safe for the public health and the environment." *Id.*

Plaintiffs make the following three claims under the Clean Air Act. First, the EPA failed to make "findings of failure" regarding nonattainment SIPS for Pottawattamie, Iowa and Arecibo, Puerto Rico.[1] FAC ¶ 2. Second, the EPA failed to take final action to approve or disapprove, in

---

[1] McCarthy filed a Request for Judicial Notice advising "the Court that [the EPA] has now made completeness determinations finding that Iowa's and Puerto Rico's submissions meet the minimum criteria." Request For Judicial Notice 2 (Dkt. No. 35). McCarthy argues that the first claim is now moot. *Id.* I GRANT the Request for Judicial Notice. However, I find that the completeness determinations do not make the first claim moot because the first claim concerns the EPA's alleged failure to make and published findings of "failure to submit" a SIP, not whether the

2

whole or in part, nonattainment SIPs for six regions: (1) Tampa, Florida; (2) Muncie, Indiana; (3) Cleveland, Ohio; (4) Delta, Ohio; (5) Eagan, Minnesota; and (6) Frisco, Texas. FAC ¶ 3. Finally, the EPA failed to take final action to approve or disapprove, in whole or in part, the infrastructure SIP for North Carolina. FAC ¶ 4.

McCarthy moves to transfer the case to a judicial district that is either (i) in one of the states or territories whose air quality is at issue in this litigation; or (ii) where the acts or omissions at issue allegedly occurred or will occur. Mot. (Dkt. No. 31). McCarthy identifies fifteen districts that satisfy one or both of these criteria: (1) District of Puerto Rico, (2) Southern District of Iowa, (3) Middle District of Florida, (4) District of Minnesota, (5) Eastern District of Texas, (6) Southern District of Indiana, (7) Northern District of Ohio, (8) District of Kansas, (9) Southern District of New York, (10) Northern District of Georgia, (11) Northern District of Illinois, (12) Northern District of Texas, and (13) Eastern, (14) Western, and (15) Middle Districts of North Carolina. *Id.* I heard argument from the parties on March 25, 2015. Dkt. No. 36.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) "requires two findings—that the district court is one where the action might have been brought and that the convenience of parties and witnesses in the interest of justice favors transfer."[2] *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (quotations omitted). The "district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quotations omitted).

Under the convenience inquiry, the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v.*

---

EPA found the SIPs complete altogether. FAC ¶¶ 33, 36. In addition, and for the same reason, the completeness determinations do not materially affect the analysis of the transfer issue.

[2] The parties do not dispute that this action could have been brought in this District or in any of the listed transferee forums. *See* Oppo. 4 (Dkt. No. 32, 4); Def.'s Br. 9.

*Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The defendant must point to, and the court must weigh, "private and public interest factors affecting the convenience of the forum." *Id.* These factors include:

> (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time [to] trial in each forum.

*Gerin v. Aegon USA, Inc.*, No. C 06-5407, 2007 WL 1033472, at *4 (N.D. Cal., Apr. 4, 2007) (citing *Jones*, 211 F.3d at 498-99).

## DISCUSSION

McCarthy argues that plaintiffs' choice of forum does not merit substantial deference and that convenience to parties and witnesses, the lack of local interest in the controversy, and court congestion weigh in favor of transfer. Def.'s Br. 9-13. Plaintiffs contend that their choice of forum deserves substantial deference, and that the presence of a local interest in the controversy and the convenience to parties and witnesses weigh against transfer. Oppo. 5-14 (Dkt. No. 32). For the following reasons, I find that McCarthy has not met her burden of showing that private and public interest factors make transfer appropriate.

### I. PLAINTIFFS' CHOICE OF FORUM

Ordinarily, a plaintiff's choice of forum receives substantial deference, especially when the forum is within the plaintiff's home district or state. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). However, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice of forum is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *but see Ctr. for Biological Diversity v. Export-Import Bank*, No. C 12-6325 SBA, 2013 WL 5273088, at *5 (N.D. Cal. Sept. 17, 2013) (addressing transfer to a district that was unrelated to the operative facts and giving plaintiffs' choice of forum substantial weight because both plaintiffs were incorporated in California and had members who lived in the Northern District of California and planned to travel to the affected area).

Courts in this District do not give substantial deference to plaintiffs' choice of forum when

the environmental impact did not occur in the chosen forum and the defendant moves to transfer the case specifically to an affected area. For example, in *Sierra Club v. U.S. Defense Energy Support Center*, No. C 10-02673 JSW, 2011 WL 89644, at *1 (N.D. Cal. Jan. 11, 2011), plaintiff brought a lawsuit to this District claiming that defendant violated the Energy Independence and Security Act by purchasing fuels that could lead to higher greenhouse gas emissions. The court found that "Plaintiff's choice of forum is given little weight because Defendant has shown that the underlying action is not connected to the Northern District of California[.]" *Id*. at *3. Further, "the [transferee] forum ha[d] some, although only minimally higher, particularized interest in the litigation" because "the operative contract activity, responsible officials, and named defendants are all located" there. *Id.*; *see also Chesapeake Climate Action Network v. Export-Import Bank of the U.S.*, No. C. 13-03532 WHA, 2013 WL 6057824, at *2 (N.D. Cal. Nov. 15, 2013) (finding that the choice of forum factor weighed in favor of transfer because "the degree to which courts defer to a plaintiff's chosen venue is substantially reduced where the forum lacks a significant connection to activities alleged in the complaint . . . *even if* the plaintiff is a resident of the forum" and "none of the operative facts arose in this district.").

Here, I find that the choice of forum deserves only minimal deference because neither the air quality in question nor the EPA's alleged failure to execute its statutory duties occurred in this District.

## II. CONVENIENCE TO PARTIES AND WITNESSES

McCarthy contends that the convenience to parties and witnesses weighs in favor of transfer because the EPA employees are located in regional offices within the affected areas, which would make it less burdensome for them and EPA attorneys to submit declarations. Def.'s Br. 11. McCarthy further claims that the convenience factors weighs in favor of transfer even more when addressing transfer specifically to the Northern District of Illinois because the regional "office in Chicago serves Minnesota, Indiana, and Ohio," which cover four areas at issue. *Id.*

This argument is unpersuasive. "In contrast to most cases in federal court, environmental cases are typically resolved by the court examining the administrative record to decide cross-motions for summary judgment . . . There are no witnesses to consider, and documentary evidence

is as easily provided in one venue as another, especially in this age of electronic transmission." *Ctr. for Biological Diversity v. Kempthorne*, No. C-07-0894 EDL, 2007 WL 2023515, at *5 (N.D. Cal. July 12, 2007) (internal quotation marks omitted). The parties believe settlement is possible and that this matter will be settled through motions for summary if settlement talks fail. Oppo. 9; Joint Case Mgmt. Statement (Dkt. No. 28) ("The parties believe that settlement may be possible" and "believe this case will be resolved by a motion for summary judgment if it is not settled").

In fact, a transfer would increase overall inconvenience, particularly to plaintiffs. If this lawsuit were transferred to one of the fifteen forums identified by McCarthy, plaintiffs--non-profit organizations with limited funds—would have increased travel costs and procedural hurdles, such as paying for costs of admission *Pro Hac Vice* and the retention of local counsel, Oppo. 10-11. Transfer might also inhibit plaintiffs' staff from attending court proceedings. Decl. of Roman Czebiniak ("Czebiniak Decl.") ¶ 13; Decl. of Michael Green ("Green Decl.") ¶ 12. In addition, EPA attorneys or witnesses based in the other fourteen forums would remain inconvenienced. Transferring this case, then, would not significantly reduce inconvenience to McCarthy and would materially inconvenience plaintiffs.

### III. LOCALIZED INTEREST

The localized interest factor requires the court to consider the current and transferee forums' interests "in having localized controversies decided at home." *Decker Coal*, 805 F.2d at 843 (quoting *Piper Aircraft*, 454 U.S. at 241); *see also Animal Legal Defense Fund*, 2013 WL 120185, at *5. Plaintiffs argue that this forum has a localized interest because CEH resides in this District, and both plaintiffs are incorporated in California and have California members who plan to travel to the affected areas. Oppo. 11-13. McCarthy argues that the presence of a California plaintiff is insufficient to establish this forum's localized interest and that the transferee forums have a stronger interest given that the operative facts occurred there. Def.'s Br. 12.

Cases in this District indicate that the Northern District of California has some localized interest when at least some of the plaintiffs are California residents. *See*, *e.g.*, *Export-Import Bank*, 2013 WL 5273088, at *7 ("Plaintiffs have not identified a localized interest in this case beyond the fact that they and some of their members are located in this district."); *Animal Legal*

6

*Defense Fund*, 2013 WL 120185, at *6 (finding that the Northern District of California had a localized interest because one plaintiff, out of seven, was a California resident). At the same time, cases in this District indicate that transferee forums also have an interest when the operative facts occurred in those forums, and that this interest outweighs California's interest in cases involving its citizens. *Chesapeake Climate Action Network*, 2013 WL 6057824, at *3 (finding that the District of Columbia had a localized interest in hearing the case there because "the administrative process occurred in the District of Columbia and the federal defendants reside there."); *Export-Import Bank*, 2013 WL 5273088, at *7 ("The Court finds that [the localized interest] factor weighs slightly in favor of transfer" because the environmental impacts did not occur at the current forum and the transferee forum is "where the Defendants reside and where the administrative process giving rise to the challenged decision occurred."); *Animal Legal Defense Fund*, 2013 WL 120185, at *6 ("The primary impact of this case would likely be outside the Northern District of California" and the "Court recognizes Plaintiffs' reasons for showing local interest in the Northern District of California, but finds them outweighed by the interest of other forums, namely Southern District of Florida.").

Here, this forum has some localized interest in this case because both plaintiffs are California residents. Czebiniak Decl. ¶ 2 ("CBD . . . is incorporated in California"); Green Decl. ¶ 4 ("CEH is incorporated in California and its main office is located in Oakland, California"). In addition, their California members have an interest in traveling to the affected areas. Czebiniak Decl. ¶ 5 (CBD has members who "enjoy, on an ongoing basis, the biological, scientific . . . recreational, and aesthetic values of . . . the areas impacted by this litigation."); Green Decl. ¶ 11 (Green "return[s] to Cleveland to visit family and friends on a frequent basis" and he "intend[s] to return there in the future. For example, [he] travelled there at the beginning of January 2015").

That said, each of the potential fifteen transferee forums has a stronger localized interest because those forums are in the states whose air quality is at issue or are located where the acts or omissions at issue allegedly occurred or will occur. FAC ¶¶ 2-4; Mot. to Transfer 2. *See Chesapeake Climate Action Network*, 2013 WL 6057824, at *3; *Export-Import Bank*, 2013 WL 5273088, at *7; *Animal Legal Defense Fund*, 2013 WL 120185, at *6. However, I find that each

7

potential transferee forum's interests outweigh this forum's interest only by a slight margin. The air quality in question and the alleged acts or omissions at issue are dispersed throughout the fifteen possible transferee forums. Only a fraction of the operative facts occurred in each transferee forum, substantially diluting each transferee forum's individual interest. Just as the localized interest of a transferee forum, such as the Northern District of Illinois, weighs against this forum's localized interest, it likewise weighs against the localized interests of the other fourteen transferee forums. Therefore, when comparing any single transferee forum to the Northern District of California, that forum's localized interest outweighs this forum's interest only slightly.

**IV. COURT CONGESTION**

Courts may use the average time between filing and disposition or trial as a measure for court congestion. *See*, *e.g.*, *Ctr. for Biological Diversity v. Lubchenco*, No. C-09-4087 EDL, 2009 WL 4545169, at *3 (N.D. Cal. Nov. 30, 2009); *Av Media, Pte, Ltd. v. OmniMount Sys.,* Inc., No. C 06-3805 JSW, 2006 WL 2850054, at *4 (N.D. Cal. Oct. 5, 2006) (addressing court congestion under section 1404(a) transfer by considering the number of civil cases and the time it took for each district to dispose of those cases). McCarthy points out that the average time between filing and disposition in this district during the twelve month period ending March 31, 2014, was 8.1 months. Def.'s Br. 12. Three of the possible transferee forums had a lower average for that period. The Northern District of Georgia has 6.7 months, the Northern District of Illinois has 6.8 months, and the Northern District of Texas has 6.4 months. *Id.* at 13. These differences are modest at best and insufficient to make the congestion factor weigh in favor of transfer. *See Lubchenco*, 2009 WL 4545169, at *3 (indicating that the differences of 1.8 months in 2006, 2.4 months in 2007, and in 2.2 months in 2008 between the Northern District of California and the District of Alaska are only modest). Moreover, there will be no delay in my court--the parties may file motions and have them heard and decided promptly, and I will set a trial when they are ready if the matter cannot be resolved on motion.

*         *         *         *

Plaintiffs' choice of forum merits some deference, albeit minimal, and the inconvenience

factor weighs against transfer. Although each potential transferee forum has a slightly stronger localized interest than this District, the private and public interest factors, in total, do not make transfer appropriate. *See Decker Coal*, 805 F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."); *Secs. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) ("[U]nless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed.").

## CONCLUSION

For the foregoing reasons, I find that McCarthy has not met her burden of showing that relevant factors weigh in favor of transfer. I DENY the Motion to Transfer.

**IT IS SO ORDERED**.

Dated: April 6, 2015

WILLIAM H. ORRICK
United States District Judge